UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SG INDUSTRIES, INC.,

        Plaintiff,

v.                                Case No. 10-cv-11119
                                HON. MARK A. GOLDSMITH

RSM MCGLADREY, INC.,

        Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 59), DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. 62), DENYING PLAINTIFF'S MOTION FOR LEAVE TO NAME AN EXPERT WITNESS AFTER CLOSE OF DISCOVERY (DKT. 90), AND DISMISSING CASE**

**I. Introduction**

Plaintiff SG Industries, Inc. has brought claims of malpractice and breach of contract against its former accounting firm, Defendant RSM McGladrey, Inc., in connection with the tax services performed by Defendant for tax years 2007 and 2008. Before the Court are Defendant's motion for summary judgment (Dkt. 59), Plaintiff's motion for partial summary judgment (Dkt. 62), and Plaintiff's motion for leave to name an expert witness and provide an expert report after the close of discovery (Dkt. 90). For the reasons that follow, the Court grants the defense motion and denies Plaintiff's motions.

**II. Background**

In 2007 and 2008, Plaintiff hired Defendant to perform tax consulting services and to prepare Plaintiff's federal and state tax returns. 2007 Engagement Letter (Dkt. 59-24); 2008 Engagement Letter (Dkt. 59-25). Defendant consulted on tax matters and prepared Plaintiff's tax

returns for those years. In September 2009, while Defendant was engaged as Plaintiff's accounting firm, Plaintiff consulted with a competing accounting firm, BDO Seidman ("BDO"). BDO reviewed the tax returns prepared by Defendant for the previous two years and submitted a memorandum identifying several "potential income tax opportunities" that it claimed Plaintiff might exploit:

- <u>Deduction for accrued payroll taxes</u>. The memo stated that Plaintiff's tax returns did not claim a payroll tax deduction for certain accrued compensation.

- <u>Deduction for certain prepaid items</u>. The memo stated that the returns may not have claimed a deduction for certain prepaid foreign taxes.

- <u>Deduction for accrued vacation pay</u>. The memo stated that it was unclear whether Plaintiff had deducted certain accrued vacation pay expenses.

- <u>Research and experimentation tax credits</u>. The memo stated that "it would be beneficial to revisit the computation of the [research and experimentation] credit to see if there are any additional costs related to research activities that are not currently being captured." The memo indicated that a different computation method might have resulted in a larger credit.

- <u>Interest Charge – Domestic International Sales Company ("IC-DISC")</u>. IC-DISC entities are not subject to tax themselves; rather, tax is collected at the shareholder level, potentially yielding tax savings. IC-DISCs can be created by companies that profit from export sales to take advantage of the favorable tax status. The memo stated that Plaintiff "may be a candidate" for such a structure.

- <u>State tax opportunities</u>. The memo indicated that (i) Plaintiff may have failed to claim a deduction allowed by the Michigan Business Tax; (ii) the deductions from gross receipts may have been too low; and (iii) Plaintiff may have been able to benefit from credits available for Michigan personal property tax payments that were not taken.

BDO Tax Review Memo (Dkt. 59-9). Plaintiff forwarded the memo to Defendant in a letter dated December 18, 2009 with a demand that Defendant re-perform the tax services for both years (Dkt. 62-4). Defendant responded with a letter explaining why it believed it had filed Plaintiff's returns properly or otherwise did not bear any liability (Dkt. 59-10). Plaintiff declined to retain Defendant as its tax preparer for the 2009 tax year, instead using BDO.

2

Asserting grounds premised on the BDO review, Plaintiff filed this action in Oakland County Circuit Court on February 17, 2010. Defendant removed it to this Court on May 19, 2010 (Dkt. 1). The United States district judge initially assigned to this case issued a scheduling order on June 2, 2010 (Dkt. 11), which provided for witness lists to be filed by September 10, 2010; a fact discovery cutoff date of October 29, 2010; expert report filing date of November 15, 2010 and completion of expert discovery by December 15, 2010.

After reassignment of the case to the undersigned judge on September 21, 2010 (Dkt. 33), the schedule was modified multiple times at the request of the parties. The due date for expert witness lists and reports was moved to February 14, 2011, and the expert discovery cut-off was moved to March 15, 2011 (Dkt. 37). Those dates were then moved again to April 15, 2011 and May 16, 2011, respectively, by stipulated order (Dkt. 44). Following a motion to further move the dates back (Dkt. 52), the Court again reset those dates to June 17, 2011 and July 15, 2011, respectively (Text-only order of 4/15/11). Plaintiff did not disclose expert witnesses or provide expert reports by the due dates.

After Plaintiff attempted to pursue further discovery beyond the discovery cut-off, Defendant filed a motion for a protective order on July 22, 2011, seeking to enforce the discovery deadlines (Dkt. 55). That same day, Plaintiff filed a motion to compel depositions of Defendant's fact and expert witnesses (Dkt. 57) and a motion for leave to file a "rebuttal expert" report to respond to Defendant's expert report (Dkt. 56). At a hearing on August 8, 2011, the Court denied Plaintiff's motion for leave to file a rebuttal expert report, allowed Plaintiff to take

3

the deposition of Defendant's expert, but denied Plaintiff's request to take the deposition of Defendant's fact witnesses (Dkt. 75).[1]

Also on July 22, 2011, Defendant filed a motion for summary judgment (Dkt. 59), in which Defendant argues that, without an expert, Plaintiff cannot prove essential elements of its claims, or refute the opinions and conclusions of Defendant's expert. Further, Defendant addressed the specific tax issues underlying Plaintiff's malpractice and breach of contract claims, presenting an expert report (Dkt. 59-5) and other evidence in support of its contention that Plaintiff's claims lack factual support:

- <u>Deduction for accrued payroll taxes</u>. Defendant argues that it is not liable for any understatement because it based its calculations on figures that Plaintiff supplied, and therefore the "[u]nderstatement of the amount – if any – was due to SG's own error." Defendant also argues that Plaintiff has produced no support for its contention that the amount was understated. Finally, Defendant argues that the matter is moot because Plaintiff later filed for the deduction in 2009, which mitigated any damages caused by Defendant's alleged negligence for earlier tax years. Def.'s Summ. J. Mot. at 3-4.

- <u>Deduction for certain prepaid items</u>. Defendant argues that Plaintiff has produced no evidence to support its claim that it qualified for the deduction. Further, Defendant argues that the matter is moot on the grounds that a deduction claimed by Plaintiff in 2009 for these expenses mitigated any damages. Id. at 4-5.

- <u>Deduction for accrued vacation pay</u>. Defendant argues that Plaintiff has produced no support for its contention that an alternate accounting method could have been used to claim additional benefits. Further, Defendant asserts that Plaintiff could have cured the alleged problem by filing for additional deductions in 2009, and therefore Defendant is not liable, even though Plaintiff did not claim a deduction for these liabilities in 2009. Id. at 6.

- <u>Research and experimentation tax credits</u>. Defendant argues that it based its calculations on figures that Plaintiff supplied and therefore Defendant is not liable for any error. Defendant also argues that Plaintiff has not produced evidence showing that it was entitled to additional credits, and that the amount in credits that BDO claimed for Plaintiff in 2009 – which is substantially similar to the

---

[1] The Court's order erroneously stated that the depositions of Plaintiff's proposed witnesses would not be allowed. It should have said that the depositions of Defendant's fact witnesses would not be allowed. A corrected order will be filed.

amounts Defendant claimed for Plaintiff in 2007 and 2008 – contradicts Plaintiff's claim that the credits should have been in a significantly higher range. Id. at 8-9.

- IC-DISC. Defendant asserts in response that an IC-DISC would not have resulted in more favorable tax treatment for the year 2008, and for 2007 it is unclear whether it would have resulted in more favorable tax treatment. To the extent that it would have been beneficial in 2007, Defendant argues that any damage resulted from Plaintiff's error in failing to provide Defendant with the necessary information to make a determination whether an IC-DISC would be beneficial. Id. at 10-12.

- Michigan Business Tax. Defendant argues that the subsequent repeal of the Michigan Business tax moots Plaintiff's claims in connection with deductions to such tax. Id. at 13-14.

- State personal property tax credit. Defendant argues that Plaintiff is ineligible for its claimed credit for 2007 because the credit is only available for taxes levied after 2007. Defendant admits that Plaintiff is eligible for credit for 2008 person property taxes paid, but argues that it can obtain the full benefit of this credit by amending its return before 2013, and therefore there are no damages for which Defendant is liable. Id. at 14-15.

- State tax deductions. Defendant argues that it based its calculations on figures that Plaintiff supplied, and therefore Defendant is not liable for any error. Defendant further maintains that it calculated deductions properly, and that Plaintiff erred in its calculation. Finally, Defendant argues that Plaintiff has mitigated any damages with a subsequently amended tax return. Id. at 16-17.

In response, Plaintiff argues that it may call at trial Defendant's expert and accountants from BDO or FGMK (another accounting firm with which Plaintiff consulted), to supply the necessary expert testimony, Pl.'s Resp. at 10-11, although it fails to provide any such opinions. Plaintiff also responds to the specific substantive arguments raised by Defendant as to the individual tax issues, claiming that Defendant's expert report and other documentation produced during discovery raise issues of fact that preclude a finding that Defendant did nothing actionable. It also claims that Defendant's motion does not adequately address Plaintiff's breach of contract claim, which it argues must be considered separately from the malpractice claim. In

addition, Plaintiff filed its own motion for partial summary judgment, requesting that Defendant be precluded from asserting that Defendant's liability is contractually limited (Dkt. 62).

The Court held a hearing on both dispositive motions on August 11, 2011. On August 18, 2011, Plaintiff's counsel filed a motion to withdraw from the case (Dkt. 83), which the Court granted (Dkt. 94). Plaintiff's new counsel filed a motion for leave to name an expert and provide an expert report after the close of discovery (Dkt. 90).

### III. Discussion

#### a. Legal Standard for Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating a motion for summary judgment,

> [t]he burden is generally on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by "showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted). In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, the facts and any inferences that can be drawn from those facts[ ] must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Biegas v. Quickway Carriers, Inc., 573 F.3d 365, 373-374 (6th Cir. 2009).

#### b. Malpractice Claim

Defendant initially argues that it is entitled to summary judgment because Plaintiff has not offered any expert testimony to establish the standard of care, breach of that standard and causation, all of which are necessary elements of its malpractice claim. The Court agrees.

"The term 'malpractice' denotes a breach of the duty owed by one rendering professional services to a person who has contracted for such services." Malik v. William Beaumont Hosp., 423 N.W.2d 920, 924 (Mich. Ct. App. 1988). "In a malpractice action, expert testimony is usually required to establish a standard of conduct, breach of that standard of conduct, and causation." Law Offices of Lawrence J. Stockler, P.C. v. Rose, 436 N.W.2d 70, 87 (Mich. Ct. App. 1989) (internal citations omitted). The reason is that "[i]n a case involving professional service the ordinary layman is not equipped by common knowledge and experience to judge of the skill and competence of that service and determine whether it squares with the standard of such professional practice in the community." Locke v. Pachtman, 521 N.W.2d 786, 790 (Mich. 1994) (quoting Lince v. Monson, 108 N.W.2d 845 (Mich. 1961)). However, Michigan courts have held that "[w]here the absence of professional care is so manifest that within the common knowledge and experience of an ordinary layman it can be said that the defendant was careless, a plaintiff can maintain a malpractice action without offering expert testimony." Stockler, 436 N.W.2d at 87.

Plaintiff does not argue that this exception to the expert-witness requirement is applicable in this case. Indeed, it could not be reasonably argued that malpractice in this case is apparent to a lay person, given that the tax issues in question are numerous and complex. The dispute involves not only whether certain expenses are deductible or claimable as a credit, but how those deductions and credits are properly calculated. Some of the issues, such as the IS-DISC issue, involve complex tax concepts with which lay people are unlikely to be familiar. Significantly, Plaintiff must rely on the observations of another professional accounting firm in its arguments that Defendant erred in preparing Plaintiff's taxes.

Rather than arguing for an exception to the expert-witness requirement, Plaintiff argues that it may satisfy this requirement by establishing the necessary elements through one of two avenues: (i) the testimony of Defendant's expert, and (ii) the testimony of accountants at BDO or FGMK. In the alternative, if these avenues do not satisfy the expert requirement, Plaintiff requests that it be allowed to supply an expert.

For the reasons that follow, the Court rejects all of Plaintiff's arguments and concludes that summary judgment should be entered on its malpractice claim.

### i. Reliance on Defendant's Expert

Plaintiff can point to nothing in Defendant's expert report (Dkt 59-9) that establishes the standard of care or supports Plaintiff's position that Defendant has breached that standard and caused Plaintiff any harm. Nor can Plaintiff defeat Defendant's motion for summary judgment by arguing that it will supply the necessary expert testimony at trial by way of Defendant's expert. Under Federal Rule of Civil Procedure 56, once a properly supported summary judgment motion has been made seeking dismissal of a claim, a plaintiff must come forward – at the summary judgment stage – with admissible evidence supportive of its claim. Matsushita, 475 U.S. at 587. A promise that such evidence will be forthcoming at trial does not suffice to overcome summary judgment. See Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002) ("A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial.").

Here, in the face of Defendant's properly supported motion, Plaintiff cannot defeat summary judgment by positing the mere hope that Defendant's expert will establish the matters upon which Plaintiff has the burden of proof. Presently, nothing in the summary judgment record before the Court provides expert testimony regarding the standard of care, breach, or

causation. Thus, Plaintiff has failed to demonstrate a triable issue of material fact on issues for which it has the burden of proof. Celotex, 477 U.S. at 325.

Defendant erroneously invokes certain Michigan cases where courts have recognized the propriety of allowing a plaintiff to rely on a defendant's expert for certain purposes, but those cases were decided in contexts procedurally different from that of the present case. For example, in Beattie v. Firnschild, 394 N.W.2d 107, 111 (Mich. Ct. App. 1986), a legal malpractice action, the court upheld a directed verdict for the defendant, where the plaintiffs had failed to present expert testimony, noting that the trial court did not abuse its discretion in refusing to allow the plaintiffs to call the defendant to establish the applicable standard of care. While the court did state that the trial could have allowed the plaintiffs to meet their burden at trial of providing expert testimony by calling the defendant as their expert, nothing in that decision would support Plaintiff's claim here that a plaintiff may forestall summary judgment by claiming that the opposing party's expert may offer testimony supportive of plaintiff's claim. The same can be said of other cases cited by Plaintiff, where courts addressed a grant or denial of a directed verdict, noting that the plaintiff's case at trial was saved by expert testimony provided by the defendant himself or the defense experts. See Rice v. Jaskolsky, 313 N.W.2d 893, 895 (Mich. 1981) (reversing grant of directed verdict for defendant because defendant-dentist's own testimony at trial established standard of care); Niemi v. Upper Peninsula Orthopedic Assoc., Ltd., 433 N.W.2d 363, 366 (Mich. Ct. App. 1988) (affirming denial of defendants' directed verdict motion because defendants' experts' testimony at trial established medical standard of care). Indeed, one case cited by Plaintiff highlights the inapplicability of the cases cited by Plaintiff to the present summary judgment context, by expressly rejecting the argument that a plaintiff may resist summary judgment by merely expressing the belief that the adverse party's

9

expert will support the non-moving party's claim at trial. See Carlton v. St. John Hospital, 451 N.W.2d 543 (Mich. Ct. App. 1990) ("Plaintiff failed to produce proofs in response to the motion which would show a genuine issue of material fact as to the standard of care for surgeons and the breach of that standard of care. Plaintiff's claim that the necessary testimony 'could be obtained . . . at trial' is, if not too little, too late.").[2]

At this point in the litigation, after the close of discovery, and having had the opportunity to take Defendant's expert's deposition, Plaintiff has not pointed to any expert testimony supportive of Plaintiff's claim in the record emanating from Defendant's expert. Thus, while Plaintiff might have been able to defeat summary judgment if such expert testimony were in the record, its reliance on Defendant's expert is purely speculative. Plaintiff has submitted no authority that supports its theory that it can survive a summary judgment motion and proceed to trial in the hope that it can elicit from Defendant's expert the necessary testimony at trial.

---

[2] Plaintiff also cites Porter v. Henry Ford Hosp., 450 N.W.2d 37, 40 (Mich. Ct. App. 1989), where the appellate court reversed a grant of summary disposition to defendant, finding that the trial court had erred in dismissing the plaintiffs' medical malpractice claim for failing to designate an expert witness. Although decided in the context of summary judgment, that case is inapposite. After the defendant had moved for summary disposition on the day of trial, arguing that the plaintiffs had designated no experts, the plaintiffs countered by stating that they would rely on the defense expert to establish the standard of care. The defendant did not dispute that its expert would and could establish the standard of care; rather, it argued that the expert would not support the plaintiffs' contention that the defendant had violated the standard of care. The appellate court found that the plaintiffs needed expert testimony only to establish the standard of care – not the breach, which the court held was for the factfinder to determine. Thus in Porter there was no dispute that expert testimony would be supplied on the one element that the appellate court believed the plaintiffs would be required to support by way of expert testimony. By contrast, in the present case, Plaintiff has failed to present expert testimony or show that such testimony has been or will be elicited from Defendant's expert. Although irrelevant to the issue of distinguishing Porter, it should be noted that the statement in Porter that expert testimony in a malpractice action is not required for breach of the standard of care is no longer good law. See Mackenzie v. Koziarki, 2011 WL 1004174, at *7 (Mich. Ct. App. Mar. 22, 2011) ("Expert testimony is required to establish the standard of care and a breach of that standard, as well as causation.") (internal citations omitted).

Accordingly, Plaintiff may not rely on Defendant's expert to contest Defendant's summary judgment motion.

### ii. Reliance on Plaintiff's Witnesses

Plaintiff next argues that it may rely on its own witnesses to establish the standard of care. Plaintiff contends that it will call representatives of BDO, its new accountant, "to testify as to what they normally do for a client such as SG and, more importantly what they did do for SG in this instance." Pl.'s Resp. at 11. Plaintiff also states that it would call as witnesses representatives of another accounting firm, FGMK, whose role Plaintiff has never fully clarified. Id. at 10-11.

Plaintiff's argument is flawed in two major respects. First, as stressed above, a response to a properly supported summary judgment must present admissible evidence to establish a triable issue of fact. Matsushita, 475 U.S. at 587. It is not acceptable for the non-moving party merely to state that it has witnesses who will support its position at trial. Del Carmen, 299 F.3d at 2. Here, Plaintiff has presented no admissible evidence from BDO, FGMK, or anyone else to establish Plaintiff's claims. Plaintiff has offered in support of its claims only: (i) a sworn declaration by Jonathan Drew (an officer of Plaintiff's affiliated entity) and (ii) BDO's communications with Plaintiff. Jonathan Drew declared, "other accountants SG hired from BDO Seidman and FMGK were easily able to determine from the documents attached to this response that RSM cost SG hundreds of thousands of dollars in improper tax planning, for which RSM must be held accountable." Drew Dec. ¶ 10 (Dkt. 68-4). This declaration is objectionable as hearsay and is not admissible to establish the substance of those firms' tax opinions. See Fed. R. Evid. 802; Alexander v. CareSource, 576 F.3d 551, 558 (6th Cir. 2009). It is also objectionable as lacking in any specificity. See Sigmon v. Appalachian Coal Props., Inc., 400 F. App'x 43, 49

(6th Cir. 2010) (affidavit containing only conclusory allegations insufficient to either support or defeat a motion for summary judgment). As for BDO's communications with Plaintiff, they are not sworn statements and thus may not be considered by the Court in deciding this summary judgment motion. See Pollock v. Pollock, 154 F.3d 601, 612 (6th Cir. 1998) (unsworn statements cannot be used to support or oppose a motion for summary judgment).

Second, Plaintiff has failed to supply an expert report for these witnesses, in violation of Federal Rule of Civil Procedure 26(a)(2). To overcome this defect, Plaintiff argues that calling Plaintiff's accountants is analogous to an injured plaintiff calling his or her treating physician, from whom an expert report may not be required in certain circumstances. Where a physician actually treats a plaintiff, the physician may testify as to the "nature, cause, and treatment" of the plaintiff's injury without filing an expert report. Rogers v. Detroit Edison Co., 328 F. Supp.2d 687 (E.D. Mich. 2004). By analogy, Plaintiff argues that it may rely on the accountants that "treated" Plaintiff in connection with the allegedly improperly prepared tax returns.

This analogy misses the mark. A treating physician need not submit an expert report only if he or she "did not purport to testify beyond the scope of their own diagnosis and treatment." Fielden v. CSX Transp., Inc., 482 F.3d 866, 877 (6th Cir. 2007). In the personal injury cases upon which Plaintiff relies, the claims did not involve malpractice and the testimony of the physician-witnesses did not relate to the standard of care; rather, their testimony only established the fact of injury. Plaintiff, on the other hand, desires to use its accountants to testify as to the standard of care and breach of that standard in a malpractice action. No case cited by Plaintiff has extended the "treating physician" rule to a malpractice case, much less to a case outside the medical sphere. Adopting Plaintiff's theory would mean that a malpractice plaintiff could effectively evade the expert report disclosure and sandbag the defendant on the central

12

issues in the litigation. The Court declines to eviscerate the protection against surprise that the expert-report requirement was designed to promote. See Id. at 871 ("Rule 26(a) generally serves to allow[ ] both sides to prepare their cases adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case.") (internal quotation omitted).

Even if the Court were inclined to extend the "treating physician" rule to this case and excuse the failure to submit an expert report, Plaintiff would still be in violation of the federal rules. Federal Rule of Civil Procedure 26(a)(2)(C) requires a party to submit a disclosure of the facts and opinions to which an expert is expected to testify when that expert is not required to submit an expert report. Plaintiff has never done this. Thus, Plaintiff's invocation of the "treating physician" rule does not spare it from summary judgment.

Based on the foregoing, it is clear that Plaintiff has failed to present expert testimony necessary to sustain essential elements of its malpractice claim against Defendant. Accordingly, summary judgment will be entered on that claim in favor of Defendant.[3]

### c. Breach of Contract Claim

Plaintiff argues that its breach of contract claim against Defendant is independent of its malpractice claim. Plaintiff further asserts that the contracts Defendant is alleged to have breached include independent contracts for tax preparation services and tax consulting services. The Court disagrees and concludes that the absence of expert testimony dooms any breach of contract claim, as well as the malpractice claim.

Under Michigan law, a claim of breach of contract for professional services is considered duplicative of the malpractice claim unless the parties entered into a "special contract."

---

[3] Given the absence of expert testimony to support Plaintiff's claim, the Court need not address Defendant's alternative substantive arguments regarding the specific tax issues.

Brownell v. Garber, 503 N.W.2d 81, 83 (Mich. Ct. App. 1993). A special contract is one in which the professional warrants a particular result. Id. Plaintiff has not alleged that Defendant warranted a particular result. Rather, Plaintiff alleges that Defendant breached an agreement "to perform these accounting and tax services for SG in a competent fashion." Compl. ¶ 22. These allegations are similar to those in Brownell, where the Michigan Court of Appeals found that "the 'contractual' duties allegedly breached by defendant are indistinguishable from the duty to render . . . services in accordance with the applicable standard of care." Id.; See also Barnard v. Dilley, 350 N.W.2d 887 (Mich. Ct. App. 1984) (applying malpractice, rather than contract, statute of limitations despite plaintiff's pleading both theories, because a failure to represent the client "adequately" is a "claim grounded on malpractice and malpractice only"); Aldred v. O'Hara-Bruce, 458 N.W.2d 671 (Mich. Ct. App. 1990) (same). Because the gravamen of Plaintiff's complaint sounds in tort, Plaintiff has no contract claim independent of its malpractice claim.[4]

Furthermore, even if Plaintiff had an independent contract claim, Plaintiff would still need to prove that the advice Defendant provided was deficient in order to show breach. As emphasized above, because of the complexity of the substantive tax issues, there is no way for Plaintiff to show that Defendant's services were not preformed in a "competent fashion" without expert testimony. Plaintiff still needs expert testimony to establish what is, in essence, the standard of care among accountants and how that standard was breached. As discussed, Plaintiff

---

[4] A professional relationship may give rise to both a malpractice and breach of contract claim where the professional's dishonor of a promise causes damage that is distinct from the damage resulting from negligence. For example, in Schlumm v. Terrrence J. O'Hagan, P.C., 433 N.W.2d 839 (Mich. Ct. App. 1988), the court recognized that the attorney's demand for payment above the agreed amount stated a claim for breach of contract that was distinct from the malpractice claim in that case based on improper advice. However, Plaintiff makes no such separate and distinct claim for breach of contract in our case.

lacks such testimony. Plaintiff has presented no admissible evidence that any tax errors were actually committed, or that any advice was erroneous, or that any such action fell below the accounting profession's standards of competence. As emphasized above, the Drew Declaration and the BDO communications with Plaintiff are unsworn hearsay. For the foregoing reasons, Plaintiff's breach of contract claim fails, and summary judgment will be entered on that claim, as well.

### d. Plaintiff's Requests For Leave to Name a Witness After Close of Discovery

In recognition of the vulnerability of its case without an expert witness, on July 22, 2011, Plaintiff filed a motion for leave to file a rebuttal expert report (Dkt. 56). The Court denied the motion at an August 8, 2011 hearing (Dkt. 75), on the grounds that Plaintiff had offered no cogent justification for having missed the repeatedly adjourned deadlines for submitting an expert report, and that granting Plaintiff's motion would necessitate adjournment of the trial. A little over a month later, on September 13, 2011, Plaintiff's new counsel filed another motion for leave to name an expert and provide an expert report (Dkt. 90). The Court denies this new motion, as well.

As an initial matter, the present motion for leave to name an expert witness is essentially duplicative of the earlier motion on the same subject. In the absence of good cause, such as newly discovered facts, a court will not generally revisit the same issue previously addressed. See Scott v. Burress, No. 09-10916, 2009 WL 1140280, at *1 (E.D. Mich. Apr. 28, 2009) (duplicative motions subject to dismissal). Because Plaintiff has not raised any new facts in support of its motion, the Court denies the motion.

Even if the Court were to review the merits of the motion, denial is still appropriate. Under Rule 26(a)(2), "a party must disclose to the other parties the identity of any witness it may

15

use at trial" to provide expert testimony and provide an expert report (if the witness is specially retained for litigation) or disclose the witness' opinions with supporting facts (if the witness is not specially retained). Plaintiff failed to do so. In such a case, Rule 37(c)(1) provides that

> if a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

"[D]istrict courts have broad discretion to exclude untimely disclosures of expert-witness testimony." Pride v. BIC Corp., 218 F.3d 566, 578 (6th Cir. 2000).

Plaintiff's failure to identify an expert witness and make the necessary expert disclosures was neither substantially justified nor harmless. It is not justified because, as discussed above, the dates set out by the Case Management and Scheduling Order had been adjusted numerous times. It is undeniable that Plaintiff had ample time to discharge its expert witness responsibility.

Plaintiff has asserted in its new motion to name an expert that "SG's new counsel does not know why its old counsel did not timely disclose an expert or provide an expert report in this case." Pl.'s Mot. by New Counsel at 3 (Dkt. 90). The Court finds this assertion puzzling. In its response to Defendant's motion for summary judgment, Plaintiff stated (through its old counsel) that "SG did not pursue the naming of an expert as the parties were engaged in a lengthy and extensive settlement dialogue which has not ended." Pl.'s Resp. at 11 (Dkt. 68). This argument reveals that the decision not to hire an expert was a deliberate one. However, the desire to save litigation expenses does not substantially justify a failure to name an expert. See Hall v. Furest, No. 02-70625, 2006 WL 2375677, at *2 (E.D. Mich. Aug. 16, 2006) (rejecting argument that plaintiff's failure to name an expert based on expense was justified). Thus, Plaintiff's excuse is not well taken and does not satisfy the substantial-justification standard.

As to whether this failure was harmless, the burden is on the potentially sanctioned party to prove harmlessness. Roberts v. Galen of Virginia, Inc., 325 F.3d 776, 782 (6th Cir. 2003). Plaintiff argues in its new motion that the delay is harmless, and that allowing it to identify an expert witness and file the required disclosures now would not prejudice Defendants. Plaintiff further contends that, if the Court finds that the failure was not harmless, the error can be cured by requiring Plaintiff to pay Defendant's costs relative to addressing a new expert witness at this late date.

The Court disagrees. Harmlessness "involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." Roberts, 325 F.3d. at 783 (quoting Advisory Committee Note to Rule 37(c)(1)). Here, there was no "honest mistake" on Plaintiff's part. It made a calculated, deliberate decision to forego retention of an expert in the hope that it could settle this case without incurring the expense of an expert. Further, to allow Plaintiff to introduce an expert several months after the close of discovery would severely prejudice Defendant. Given that the lack of an expert was a significant basis for Defendant's motion for summary judgment, Defendant would have to reexamine its entire theory of defense. Thus, at stake for Defendant is not merely inconvenience or the costs associated with deposing the new expert, as Plaintiff contends. In addition, allowing a new expert witness in this case would further delay Defendant's right to a resolution of this case – a factor upon which a finding of prejudice may be based. Grain v. Trinity Health, No. 03-72486, 2008 WL 5273635, at *3 (E.D. Mich. Dec. 18, 2008).

Finally, the Court's own interest in the orderly processing of the case would be defeated if the Court were to grant Plaintiff's new motion. See Freeman v. City of Detroit, No. 09-13184, 2011 WL 2531248, at *2 (E.D. Mich. June 24, 2011) (disregarding dates set by court order

would "not only undermine the court's ability to control its docket and disrupt the course of the litigation, but also it would effectively 'reward the indolent and the cavalier'") (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992)). Granting Plaintiff's motion would be tantamount to allowing Plaintiff to "take a mulligan" on its decision not to engage an expert and enable it to re-litigate the case using a dramatically different strategy. In essence, Plaintiff asks the Court to delay judgment in this case – postponing summary judgment and possibly trial – for months while it attempts to secure an expert who can substantiate its claims. Notably, to this day, Plaintiff has not even proffered a proposed report from an expert, confirming that Plaintiff still does not have an expert prepared to swear out an opinion in support of Plaintiff's claims. Allowing Plaintiff to name an expert at this late date would set a dangerous precedent because parties would be encouraged to litigate "on the cheap" in the hopes of securing a settlement, while they remain confident that they could then litigate in a more thorough manner if no settlement materialized. Opposing parties would never know, with confidence, what record of facts they must address at the summary judgment stage. Nor would courts know whether a case was ripe for summary judgment adjudication or might have to be postponed for several months while another round of expert discovery is conducted.

In these circumstances, the Court declines to delay the day of judgment and denies Plaintiff's motion for leave to name an expert after the close of discovery.[5]

---

[5] Because Plaintiff seeks deferral of summary judgment by way of its motion for leave to name an expert, the Court addresses Federal Rule of Civil Procedure 56(d), although Plaintiff did not invoke that rule. The rule grants discretion to a court to defer consideration of a summary judgment motion to conduct discovery or obtain affidavits. Egerer v Woodland Realty, Inc., 556 F.3d 415, 425-426 (6th Cir. 2009). However, the rule requires the party seeking deferral to file an affidavit or declaration setting forth the specific reasons justifying the request for deferral. Summers v Leis, 368 F.3d 881, 887 (6th Cir. 2004). Because Plaintiff filed no supporting affidavit or declaration, the present motion would be defective under Rule 56(d). Cacevic v. City

    **e. Plaintiff's Motion for Partial Summary Judgment**

Given that Plaintiff's claims are subject to summary judgment, Plaintiff's motion for partial summary judgment on Defendant's liability is denied as moot.

## IV. Conclusion

For the reasons set forth above, Defendant's motion for summary judgment (Dkt. 59) is granted, Plaintiff's motion for partial summary judgment (Dkt. 62) is denied, and Plaintiff's motion for leave to name expert and provide expert report after close of discovery (Dkt. 90) is denied. Accordingly, the case is dismissed.

    SO ORDERED.

Dated: December 7, 2011                    s/Mark A. Goldsmith
     Flint, Michigan                     MARK A. GOLDSMITH
                                           United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 7, 2011.

                                               s/Deborah J. Goltz
                                               DEBORAH J. GOLTZ
                                               Case Manager

---

of Hazel Park, 226 F.3d 483, 488 (6th Cir. 2000) ("Where a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by Rule 56(f) [now 56(d)] by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate.") (quoting Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d 828, 832-33 (10th Cir.1986)). Moreover, the content of the motion, even if it had been supported by an affidavit, does not establish good cause for deferral. Plaintiff's failure to obtain the necessary expert testimony was the result of its own calculated decision. Given that Rule 56(d) "is not intended to shield counsel who are dilatory," Steele v City of Cleveland, 375 F. App'x. 536, 541, n.3 (6th Cir. 2010), it is certainly not designed to provide an avenue for relief where a party's own strategy has deprived it of information with which to oppose summary judgment. To the extent Plaintiff's motion to name an expert is deemed a motion for deferral under Rule 56(d), it is denied for failure to supply an affidavit or establish good cause.